**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

Case No. 1:25cv21998

CARLSON PET PRODUCTS, INC.,

    Plaintiff,

v.

THE INDIVIDUALS, CORPORATIONS,
LIMITED LIABILITY COMPANIES,
PARTNERSHIPS, AND
UNINCORPORATED ASSOCIATIONS
IDENTIFIED ON SCHEDULE A,

    Defendants.

_____/

## COMPLAINT

Plaintiff Carlson Pet Products, Inc. ("Carlson"), by and through its undersigned counsel, brings this Complaint against Defendants – the individuals, corporations, limited liability companies, partnerships, and unincorporated associations and foreign entities identified on Schedule A[1] (collectively, "Defendants") – and hereby alleges as follows.

### NATURE OF THE ACTION

1. This is an action for patent infringement to combat e-commerce store operators who have embarked on an intentional scheme of trading upon Carlson's reputation and goodwill by making, importing, offering for sale, and selling into the United States for subsequent sale or use, unauthorized and unlicensed products which infringe Carlson's U.S. Patent No. 11,085,233 (the "'233 Patent" or the "Asserted Patent").

---

[1] Carlson intends to file a Motion to Seal "Schedule A."

2. Each of the Defendants directly and/or indirectly makes, imports, distributes, markets, offers to sell and/or sells barrier gate products that infringe one or more claims of the Asserted Patent (collectively the "Accused Products") in the United States, including in this Judicial District, and otherwise purposefully directs infringing activities to this District in connection with the Accused Products. Defendants conduct this activity through various fully interactive commercial Internet e-commerce storefronts operating under online marketplace accounts also set forth on Schedule A (the "Seller IDs"), including but not limited to Amazon.com Inc.'s ("Amazon") well-known online retail marketplace and ecommerce platform.

3. The Seller IDs share unique identifiers, such as using the same or similar product images, advertising, design elements, and similarities of the Accused Products offered for sale, thereby establishing a logical relationship between them and suggesting that Defendants' illegal operations arise out of the same infringing product, same transaction, occurrence, or series of transactions or occurrences.

4. Defendants attempt to avoid liability by going to great lengths to conceal both their identities and the full scope and interworking of their illegal operations. Carlson is forced to file this action to combat Defendants' infringement of the Asserted Patent, as well as to protect unknowing consumers from purchasing the Accused Products sold by Defendants.

5. As a result of Defendants' actions, Carlson has been and continues to be irreparably damaged from the loss of its lawful patent rights to exclude others from making, using, selling, offering for sale, and importing its patented technology, and, therefore, seeks injunctive and monetary relief.

6. The harm and damages sustained by Carlson has been directly and proximately caused by Defendants' manufacture, importation, offers to sell, and sale of the Accused Products.

7.      This Court has personal jurisdiction over each Defendant, in that on information and belief, each Defendant conducts significant business in Florida and in this Judicial District, and the acts and events giving rise to this lawsuit of which each Defendant stands accused were undertaken in Florida and in this Judicial District.

8.      In addition, each Defendant has offered to sell, has sold and has distributed the Accused Products into this Judicial District.

## JURISDICTION AND VENUE

9.      This Court has original subject matter jurisdiction over the patent infringement claim arising under the patent laws of the United States pursuant to 35 U.S.C. §§ 1 *et seq.*, 28 U.S.C. §§ 1331 and 1338(a).

10.     Defendants are subject to personal jurisdiction in this district because they direct business activities toward and conduct business with consumers through the United States, including within the State of Florida and this District, through at least the Internet based e-commerce stores and fully interactive commercial internet websites accessible in Florida and operating under Defendants' Seller IDs on Amazon.

11.     Upon information and belief, Defendants have been systematically directing and/or targeting their business activities at consumers in the United States, including those in Florida, in this Judicial District, through accounts with online marketplace platforms such as Amazon, as well as any and all as yet undiscovered accounts with additional online marketplace platforms held by or associated with Defendants, their respective officers, employees, agents, servants and all persons in active concert or participation with any of them ("User Account(s)"). Defendants target consumers in the United States, including Florida (and more particularly, in this Judicial District), through these marketplace platforms, in which consumers transact with Defendants regarding the

Accused Products and place orders for, receive invoices for, and purchase the Accused Products for delivery in the U.S., including Florida (and more particularly, in this Judicial District). Defendants use these platforms as a means for establishing regular business with the U.S., including Florida (and more particularly, in this Judicial District).

12. Upon information and belief, Defendants have transacted business with consumers located in the U.S., including Florida (and more particularly, in this Judicial District), for the sale and shipment of the Accused Products. Defendants further offer to place or place the Accused Products into the stream of commerce, with the knowledge or understanding that these products will be sold or used in this District. As such, Defendants expect their actions to have consequences within this District.

13. To the extent Defendants do not reside in the United States, venue is proper in this Court because, pursuant to 28 U.S.C. § 1391(c)(3), Defendants that do not reside in the United States may be sued in any judicial district. Alternatively, venue is proper pursuant to 35 U.S.C. § 1400(b), because on information and belief, Defendants have committed acts of infringement and have a regular and established place of business in this District.

## CARLSON

14. Carlson is a Minnesota corporation with a primary place of business located at 3200 Corporate Center Drive, Suite 100, Burnsville, Minnesota 55306.

15. Carlson is a family-owned company that since 2006 has been extensively engaged in the business of manufacturing and marketing in interstate commerce a wide variety of pet gates and other pet related products. It is a pioneering company that began when it realized that pet gates did not exist specifically for pet owners, who then used baby gates that often were not big, strong, or high enough to keep pets inside or outside of an area. Since its inception, Carlson's

commitment to innovation and quality has in large part fueled its tremendous growth. It has become one of the world leaders in the production and distribution of safety and barrier gate products at issue in this matter.

16. Carlson has invested substantial resources in the development of its safety and barrier gate products and establishing its reputation among consumers as having industry-leading products of the highest quality, safety, and performance.

17. Carlson's products are designed and contrasted to meet enhanced industry standards and have been validated by numerous standards organizations.

18. Carlson's ongoing efforts and the innovations resulting therefrom have given rise to numerous United States patents that cover many novel and unique aspects of its line of products, including the '233 Patent, which are directed to novel and unique safety and barrier gate features.

19. On August 10, 2021, the '233 Patent, entitled "Gate Apparatus With Springless Automatic Return Gate," was duly and regularly issued to Carlson, as assignee of the inventors, Mark A. Flannery and Porter R. Million. A true and correct copy of the '233 Patent is attached hereto as **Exhibit 1**. Carlson is now and has been at all times since the respective dates of issuance of the '233 Patent the owner of that patent and of all rights thereto and thereunder.

20. Carlson offers for sale and sells products that embody the inventions of the '233 Patent. The products are marked with the number of the '233 Patent accordance with 35 U.S.C. § 287(a), thereby providing public notice of the patent, including notice to Defendants.

21. Carlson has gone to great lengths to protect its interests in its safety and barrier gate products, as well as the Asserted Patent. No one other than Carlson and its distributors are authorized to manufacture, import, export, advertise, offer for sale, or sell any product covered by the Asserted Patent.

22. Carlson has not licensed or authorized any Defendant to use the invention claimed in the Asserted Patent and none of the Defendants are authorized retailers of Carlson Products.

## DEFENDANTS AND THEIR UNLAWFUL CONDUCT

23. Defendants are individuals and business entities who, upon information and belief, reside mainly in the People's Republic of China or other foreign jurisdictions. Defendants conduct business throughout the United States, including within the State of Florida and this Judicial District, through the operation of fully interactive commercial websites and online marketplaces operating under Defendants' Seller IDs on Amazon.

24. Each Defendant targets the United States, including Florida, and has offered to sell and, on information and belief, has sold and continues to sell, barrier gate products that infringe one or more claims of the Asserted Patent to consumers within the United States, including Florida and this Judicial District. On further information and belief, each Defendant has imported one or more of the Accused Products into the State of Florida for distribution via Amazon.

25. On information and belief, Defendants are the past and present controlling forces behind the sale and offer for sale of the barrier gate products that infringe the Asserted Patent as described herein, using the Seller IDs.

26. On information and belief, Defendants go to great lengths to conceal their identities and often use multiple fictitious names and addresses to register and operate their massive network of Defendant Internet Stores.

27. For example, it is common practice for persons selling the Accused Products to register their User Accounts with incomplete information, randomly typed letters, or omitted cities or states.

6

28. Many Seller IDs conceal their owners' true identity and contact information. On information and belief, Defendants regularly create new online marketplace accounts on various platforms using the identities listed in Schedule A, as well as other unknown fictitious names and addresses. Such furtive registration patterns are one of many common tactics used by the Defendants to conceal their identities, the full scope and interworking of their operation, and to avoid liability.

29. Tactics used by Defendants to conceal their identities and the full scope of their operation make it virtually impossible for Carlson to learn Defendants' true identities and the exact interworking of their network. In the event that Defendants provide additional credible information regarding their identities, Carlson will take appropriate steps to amend the Complaint.

30. Defendants directly compete with Carlson by making, advertising, offering for sale, selling and importing goods that infringe one or more claims of the Asserted Patents to consumers within the United States and this District through Internet based e-commerce stores using, at least, the Seller IDs and additional names or seller identification aliases not yet known to Carlson. Defendants have purposefully directed some portion of their illegal activities towards consumers in the State of Florida through advertisements, offers to sell, sales, and/or shipment of the Accused Products into the State.

31. On information and belief, Defendants will continue to register or acquire new seller identification aliases for the purpose of selling and offering for sale barrier gate products that infringe the claims of the Asserted Patents unless preliminarily and permanently enjoined.

32. The success of Carlson's safety and barrier gate products has resulted in a significant number of copycats and products that infringe one or more claims of the Asserted Patent being sold in the marketplace.

33. Carlson has identified numerous infringers linked to fully interactive marketplace listings on platforms such as Amazon that are offering for sale, selling, and importing the Accused Products to consumers in this Judicial District and throughout the United States.

34. Defendants have persisted in creating such online marketplaces and internet stores. In fact, such online marketplaces and stores are estimated to receive tens of millions of visits per year and to generate more than $135 billion in annual online sales. According to an intellectual property rights seizures statistics report issued by the United States Department of Homeland Security, the manufacturer's suggested retail price of goods seized by the U.S. government in fiscal year 2021 was more than $3.3 billion. Infringing online marketplaces and internet stores like those operated by Defendants are also estimated to contribute to tens of thousands of lost jobs for legitimate businesses and broader economic damages such as lost tax revenue every year.

35. Upon information and belief, Defendants use unauthorized search engine optimization ("SEO") tactics and manipulation of Amazon's sponsored ad systems so that their product listings show up at or near the top of relevant search results and misdirect consumers searching for genuine Carlson safety and barrier gate products. As such, Carlson also seeks to disable Defendants' online marketplaces and internet storefronts that are the means by which the Defendants could continue to sell the Accused Products into this District.

36. On information and belief, even though Defendants operate under multiple fictitious names, there are numerous similarities among their online marketplaces and internet storefronts. For example, some of the Defendant Internet Stores have virtually identical layouts and use of the same or similar advertising text and images. In addition, the Accused Products bear similarities and indicia of being related to one another, suggesting that the Accused Products are

the same product or are manufactured by and come from a common source and that Defendants are interrelated.

37. A review of the Accused Products reveals that they contain many of the identical components and virtually identical product configurations.

### COUNT I – PATENT INFRINGMENT
### UNITED STATES PATENT NO. 11,085,233

38. Carlson incorporates by reference and realleges the foregoing paragraphs as if fully set forth herein.

39. Defendants have infringed and continue to infringe at least one claim of the '233 Patent pursuant to 35 U.S.C. § 271(a), literally or under the doctrine of equivalents, by making, offering to sell, or selling the Accused Products within the United States and this Judicial District and/or importing them into the United States and this Judicial District, without authority or license.

40. For example, and by no means limiting, Defendants infringe at least Claim 2 of the '233 Patent, as detailed in the representative claim charts of two products that are representative of the Accused Products, which are annexed as **Exhibit 2** and made a part hereof.[2]

41. Defendants and Carlson are competitors in a highly competitive industry where competitors closely monitor each other's products, technology developments, and patents. On information and belief, Defendants have long been aware of Carlson. On further information and belief, before Defendants launched the Accused Products into the market, they knew of the '233

---

[2] Exhibit 2 (filed under seal) comprises preliminary and exemplary claim charts describing infringement of Claim 2 of the '233 Patent by exemplary examples of the Accused Products and is merely provided to put the Defendants on notice of the claims against them. The claim charts are not intended to limit Carlson's right to modify the charts or allege that other products of Defendants infringe the identified claims or any other claims of the '233 Patent or any other patents. Each claim element in Exhibit 2 that is mapped to an Accused Product shall be considered an allegation within the meaning of the Federal Rules of Civil Procedure, and therefore a response to each claim element is required.

Patent from their routine monitoring of Carlson's commercial activities, and a reasonable opportunity for discovery will likely provide evidentiary support for this fact.

42. On information and belief, Defendants' infringement has been and is willful, in bad faith, and in conscious disregard for Carlson's exclusive rights.

43. Defendants' infringement of the '233 Patent has caused, and will continue to cause, significant damage to Carlson. As a result, Carlson is entitled to an award of damages adequate to compensate it for the infringement in an amount that is in no event less than a reasonable royalty pursuant to 35 U.S.C. §284. Carlson is also entitled to recover prejudgment interest, post-judgment interest, costs, and any other damages as appropriate pursuant to 35 U.S.C. § 284.

44. Defendants' infringing activities described herein have caused and continue to cause significant irreparable harm to Carlson, including *inter alia*, lost sales, price erosion, lost market share, a significant negative impact on Carlson's goodwill, as well as a loss of the right to exclusivity.

45. While the Accused Products mimic Carlson's safety and barrier gates and incorporate their patented features, the Accused Products are not certified under applicable industry standards, making them objectively inferior products. Such circumstances cause irreparable harm to Carlson by not only diverting sales, but also by eroding Carlson's reputation and brand distinction of having industry leading products of the highest quality, safety, and performance.

46. While the Defendants have infringed the '233 Patent through the aforesaid acts and will continue to do so unless enjoined by this Court. Defendants' wrongful conduct has caused Carlson to suffer irreparable harm. Carlson is entitled to injunctive relief pursuant to 35 U.S.C. § 283. Unless a preliminary and permanent injunction is issued enjoining Defendants and all others

acting in concert therewith from infringing the '233 Patent, Carlson will continue to be irreparably harmed.

## PRAYER FOR RELIEF

WHEREFORE, Carlson demands judgment on all Counts of this Complaint and an award of equitable and monetary relief against Defendants as follows:

1. Entry of judgment that:

    a. Defendants have infringed the claims the '233 Patent; and

    b. The foregoing infringement has been willful.

2. Issuance of a temporary restraining order, preliminary and permanent injunction restraining, enjoining, and prohibiting Defendants and their affiliates, parents, successors, assigns, officers, agents, representatives, servants, employees, attorneys and all persons acting for, with, by, through, under, or in active concert with them from:

    a. Manufacturing, importing, offering to sell, or selling the Accused Products;

    b. Infringing the claims of the '233 Patent;

    c. aiding, abetting, contributing to, or otherwise assisting anyone in infringing upon the '233 Patent;

    d. shipping, delivering, holding for sale, transferring, or otherwise moving, storing, distributing, returning, or otherwise disposing of, in any manner, products or inventory not manufactured by or for Carlson, nor authorized by Carlson to be sold or offered for sale, and which infringe the claims of the '233 Patent; using, linking to, transferring, selling, exercising control over, or otherwise owning any online marketplace accounts that is being used to sell or is the means by which Defendants could continue to sell the Accused Products; and

   e. effecting assignments or transfers, forming new entities or associations or utilizing any other device for the purpose of circumventing or otherwise avoiding the prohibitions set forth in Subparagraphs (a) through (d) above.

  3. Entry of an order that Amazon and any other online marketplace account provider:

   a. disable and cease providing services for any accounts through which Defendants engage in the sale of products that infringe the claims of the '233 Patent, including any accounts associated with the Defendants listed on Schedule A;

   b. disable and cease displaying any advertisements used by or associated with Defendants in connection with the sale of products that infringe the claims of the '233 Patent; and

   c. take all steps necessary to prevent links to the online marketplace account set forth on Schedule A from displaying in search results, including, but not limited to, removing links to such accounts from any search index.

  4. Award Carlson such damages as it shall prove at trial against Defendants that are adequate to compensate Carlson for Defendants' infringement of the claims of the '233 Patent, but in no event less than a reasonable royalty for the use made of the invention by the Defendants, together with interest and costs, pursuant to 35 U.S.C. § 284.

  5. Award Carlson enhanced damages, as provided by 35 U.S.C. § 284;

  6. Award Carlson its reasonable attorneys' fees and costs.

  7. Grant Plaintiffs such other and further relief as the Court may deem just and proper under the circumstances.

## DEMAND FOR JURY TRIAL

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Carlson respectfully demands a trial by jury on all issues triable by jury.

Dated: April 30, 2025

Respectfully submitted,

By: */s/ Maria Ermakova*
Maria Ermakova (FBN 1056797)
E-mail: mermakova@cozen.com
COZEN O'CONNOR P.C.
200 South Biscayne Blvd., Suite 3000
Miami, Florida 33131
Telephone: 305-397-0807

Bradley D. Liddle (*pro hac vice* forthcoming)
Texas Bar Number 24074599
E-mail: bliddle@cozen.com
COZEN O'CONNOR P.C.
1717 Main Street, Suite 3100
Dallas, Texas 75201

Frederick A. Tecce (*pro hac vice* forthcoming)
Pennsylvania Bar Number 47298
E-mail: Fred.tecce@altimaadvisors.com
ALTIMA ADVISORS/ATTORNEYS, LLC
One Liberty Place – 55th Floor 1650 Market Street
Philadelphia, Pennsylvania 19103
Telephone No. (215) 268-7525
Facsimile No. (215) 268-7526

*Attorneys for Plaintiff*
CARLSON PET PRODUCTS, INC.